IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HUBERT KING, )
)
Plaintiff, )
)
v. ) 1:20CV1008
)
KILOLO KIJAKAZI,[1] )
Acting Commissioner of Social Security, )
)
Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Hubert King ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on January 11, 2016. (Tr. at 17, 332-40.)[2] His claim was denied initially (Tr. at 74-86, 130-41), and that determination was upheld on reconsideration (Tr. at 87-104, 142-51). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 152.) Plaintiff did not

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).
[2] Transcript citations refer to the Administrative Record [Doc. #9].

appear at his original hearing (Tr. at 105-09), but upon appeal, the Appeals Council directed the ALJ to offer him an opportunity for a new hearing (Tr. 14, 111-12). Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on March 2, 2020. (Tr. at 14.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and on September 14, 2020, the Appeals Council denied Plaintiff's request for a review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 2-7).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefit programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairments; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps and establishes at step three that the impairment 'equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity since January 11, 2016, the application date." (Tr. at 17.)[5] Plaintiff therefore met his burden at step one of the sequential-evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> schizophrenia disorder, anxiety disorder, and learning disorder[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 17.) Therefore, the ALJ assessed Plaintiff's RFC as follows:

---

be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] The ALJ noted that Plaintiff had engaged in some work activity, particularly during 2018, but it was "not necessary to determine whether that work activity constitutes disqualifying substantial gainful activity" because in any event "there exists a valid basis for denying [Plaintiff's] application" as explained in the remainder of the decision.

5

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); perform simple work-related decisions; occasionally interact with supervisors and co-workers; never interact with the public; and make simple work-related decisions.

(Tr. at 19.) At step four of the analysis, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. at 24.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to properly consider the effects of Plaintiff's limitations in maintaining concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Second, he argues that the ALJ erred by failing to consider medical opinions properly in accordance with 20 C.F.R. § 416.927. After a thorough review of the record, the Court finds that neither of Plaintiff's claims require remand.

A. Non-Exertional Limitations

Plaintiff first argues that the ALJ failed to properly include non-exertional limitations in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d at 638. In this regard, the ALJ determined at step three of the sequential analysis that Plaintiff has moderate limitations in his concentration, persistence, and pace. In Mascio v. Colvin, the Fourth Circuit explained that, where moderate limitations in concentration, persistence, and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically

held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light

7

of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 18.) In making this finding, the ALJ specifically reasoned that:

> [Plaintiff] testified to concentration difficulty. However, in a function report, the claimant's aunt indicated that [Plaintiff] could count change . . . and play video games with some difficulty. Further, [Plaintiff] reported noncompliance with psychotropic medication on multiple occasions. Additionally, despite findings of distraction, [Plaintiff] had generally normal mental status examination findings, including linear and goal-directed thought. In his final examination in counseling, [Plaintiff] had even greater generally normal findings, including adequate concentration and unremarkable attention. For these reasons, the undersigned finds that [Plaintiff] would have no more than moderate limitations in his ability to maintain concentration, persistence, or pace.

(Tr. at 18) (internal citations omitted). Later in the sequential analysis, the ALJ formulated a mental RFC finding Plaintiff "able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); perform simple work-related decisions; occasionally interact with supervisors and co-workers; never interact with the public; and make

8

simple work-related decisions." (Tr. at 19.) Plaintiff now argues that, in making these RFC findings, the ALJ did not fully account for Plaintiff's ability to concentrate or stay on task in light of his moderate difficulties with concentration, persistence, or pace. Plaintiff further contends that the ALJ failed to "build an accurate and logical bridge from [that] evidence to his conclusion" so that the Court may afford Plaintiff meaningful review of the SSA's ultimate findings. Woods v. Berryhill, 888 F.3d 686, 694 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

As an initial matter, Plaintiff fails to acknowledge that, unlike in Mascio, the RFC in the present case included restrictions beyond simple, routine, and repetitive tasks to account for Plaintiff's mental limitations. In particular, the ALJ determined that Plaintiff could not work at a production-rate pace and could perform and make only simple work-related decisions. (Tr. at 19.) In addition, the ALJ included limitations on social interactions, based on Plaintiff's distractibility noted during examinations. (Tr. at 22.) As Defendant correctly notes, other decisions in this District have specifically concluded that such restrictions adequately account for moderate limitations in concentration, persistence, or pace. See, e.g., Farrington v. Berryhill, No. 1:15CV846, 2017 WL 807180, at *4-5; Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016); Bryan-Tharpe v. Colvin, No. 1:15CV00272, 2016 WL 4079532 at *7 (M.D.N.C. July 29, 2016).

Moreover, the ALJ in the present case not only included significant RFC restrictions relating to Plaintiff's limitations in concentration, persistence, and pace, but also specifically explained his reasons for doing. For example, at step three, the ALJ acknowledged the Plaintiff's moderate limitations concentration, persistence, and pace, but pointed out that

9

Plaintiff "had generally normal mental-status examination findings, including linear and goal-directed thought." (Tr. at 18.) The ALJ further stated that "[i]n his final examination in counseling, the [Plaintiff] had even greater generally normal findings, including adequate concentration and unremarkable attention." (Tr. at 18.) In explaining his RFC determination, the ALJ determined that the objective medical evidence showed that Plaintiff, despite frequently not taking his medication and declining a long-acting injectable medication, "was able to perform some work cleaning airplane cabins," had a "conservative treatment plan for symptoms[,] . . . includ[ing] counseling and psychotropic medication," and "generally normal [mental-status examination] findings." (Tr. at 20-21.)

The ALJ also relied on the mental health opinion evidence to support the RFC limitations in this case. In particular, the ALJ considered the opinions of state-agency psychological consultants, April L. Strobel-Nuss, Psy.D, and Margaret Barham, Ph.D., giving both opinions "significant weight." (Tr. at 22 (citing Tr. at 80, 82-84, 97, 100-02).) Both consultants opined that Plaintiff would have no more than moderate limitations in concentration, persistence, and pace, and the ALJ found that their opinions were supported by the objective medical evidence. (Tr. at 22 (citing Tr. at 729, 736, 743, 751-52, 758-59, 767, 774-75, 783, 789, 1475-76, 1481-82, 1488-89, 1500, 1741-42).) Dr. Strobel-Nuss noted, in particular, that the severity of Plaintiff's symptoms did "not rise to the level to preclude [simple, routine, repetitive tasks]." (Tr. at 80.) Dr. Strobel-Nuss ultimately concluded that despite Plaintiff's limitations, including his moderate limitations in concentration, persistence, and pace, Plaintiff had "the mental capacity for the sustained performance of relatively [simple routine repetitive tasks] in relatively undemanding work settings that do not require intensive

10

interpersonal relating and that require no more than two hours at a time of maintenance of attention and concentration." (Tr. at 80, 82-84.) Dr. Barham similarly concluded that Plaintiff's limitations, including his moderate limitations in concentration, persistence, and pace, would not preclude performance of simple routine repetitive tasks, and Plaintiff "appears to retain the mental capacity for he sustained performance of [simple routine repetitive tasks] in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at a time of maintenance of attention and concentration." (Tr. at 98, 100-02.) By citing these findings and according them "significant weight," and then including in the RFC the limitations suggested by Dr. Barham and Dr. Strobel-Nuss, the ALJ adequately explained and accounted for Plaintiff's limitations in concentration, persistence, and pace.[6]

The ALJ also gave "significant weight" to the report of psychiatric consultative examiner Rebecca A. Kuhns, M.D. Dr. Kuhns opined that Plaintiff "would not have significant difficulty <u>sustaining concentration</u> to perform simple repetitive tasks." (Tr. at 23 (citing Tr. at 451) (emphasis added).) Dr. Kuhns examined Plaintiff in 2013, more than two years prior to Plaintiff's alleged onset date, but the ALJ noted that her findings were consistent with Plaintiff's medical records, including his most recent mental-status examination in

---

[6] Notably, the ability to concentrate for up to two hours at a time falls within the general requirements for ordinary work, as defined by the SSA's own policies and procedures. The agency's Program Operations Manual System ("POMS") provides that any job, including unskilled work, requires "[t]he ability to maintain concentration and attention for extended periods (the approximately 2–hour segments between arrival and first break, lunch, second break, and departure)," POMS DI 25020.010 B.2.a., and further lists the ability to "maintain attention for extended periods of 2–hour segments (concentration is not critical)" among "Mental Abilities Critical For Performing Unskilled Work," POMS DI 25020.010 B.3.d. These directives indicate that the two-hour period included by Dr. Strobel-Nuss and Dr. Barham merely clarified that Plaintiff's mental impairments do not prevent him from performing the normal concentration requirements of sustained work.

11

January 2020, in which the "findings included full orientation, intact recent and remote memory, adequate concentration and unremarkable attention, articulate and fluent speech, appropriate appearance, normal speech, unremarkable thought content, appropriate judgment and appropriate mood and affect." (Tr. at 23 (citing Tr. at 741-42).) In according this opinion significant weight and including the limitation to simple repetitive tasks suggested by Dr. Kuhn, the ALJ adequately explained and accounted for Plaintiff's limitations, particularly as to his ability to sustain concentration.

The ALJ also gave "significant weight" to an earlier October 20, 2009 decision made by ALJ Miller to deny Plaintiff's prior claim. However, the ALJ took note of Plaintiff's additional limitations and included in the current RFC "additional limitations regarding social interaction, based upon observation of distraction in examinations, and report of anxiety symptoms in counseling sessions." (Tr. at 22 (citing Tr. at 729, 736, 743, 751-52, 758-59, 767, 774-75, 783, 789, 1475-76, 1481-82, 1488-89, 1500, 1741-42).) The ALJ therefore acknowledged that Plaintiff's condition had created increased obstacles through the years since his first application for SSI benefits, and he adjusted the RFC accordingly.

Finally, the ALJ noted that, despite its remoteness in time, the report of examining psychologist Anthony Smith, Ph.D., included an opinion that Plaintiff's "symptoms would not inhibit performance of unskilled work or maintaining concentration, persistence, and pace." (Tr. at 23.) The ALJ generally gave this portion of Dr. Smith's opinion significant weight, and included a limitation of unskilled work. However, the ALJ also included additional limitations in the RFC and gave the remainder of Dr. Smith's opinion little weight in light of

12

Case 1:20-cv-01008-NCT-JEP   Document 18   Filed 03/21/22   Page 12 of 17

its remoteness in time and in order to fully account for additional limitations reflected in the more recent records.

Ultimately, the ALJ relied on multiple opinions providing substantial evidence to support the RFC determination, and also included sufficient explanation and analysis to explain his reasoning and the basis for the RFC determination. This analysis satisfies Mascio, and there is no basis for remand on that ground.

B. Opinion Evidence

In a related argument, Plaintiff contends that the ALJ failed to sufficiently consider the medical opinion evidence in accordance with the regulations, specifically the opinions of Dr. Strobel-Nuss, Dr. Barham, Dr. Kuhns, and Dr. Smith. (Pl.'s Br. [Doc. #12] at 13.) For claims like Plaintiff's that are filed before March 24, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Id. (quoting 20 C.F.R. § 404.1527(c)(1)). Each opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability

13

Case 1:20-cv-01008-NCT-JEP   Document 18   Filed 03/21/22   Page 13 of 17

of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. The ALJ must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted).[7]

However, in the present case, as noted by Defendant, the ALJ included in the RFC all of the limitations outlined in the medical opinions, and there are no medical opinions that reflect that Defendant is disabled or that include greater limitations beyond those included in the RFC. With regard to the opinions of Dr. Strobel-Nuss and Dr. Barham, Plaintiff argues that the ALJ did not "distinguish which portions of the opinions were given less weight and why." (Pl.'s Br. at 13). Plaintiff points specifically to portions of the assessments by Dr. Strobel-Nuss and Dr. Barham indicating that Plaintiff could "sustain attention for short periods of time." (Pl.'s Br. at 13 (citing Tr. 83, 101).) However, as noted above, both Dr. Strobel-Nuss and Dr. Barham further explained how this limitation affected Plaintiff's ability to work, and concluded that Plaintiff had "the mental capacity for the sustained performance of relatively [simple routine repetitive tasks] in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at a time of maintenance of attention and concentration." (Tr. at 80, 82-84, 98, 100-02.) These

---

[7] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the regulatory provisions set out above.

restrictions are reflected in the RFC, which limited Plaintiff to simple, routine, repetitive tasks, no production pace work, simple work related decisions, and interpersonal limitations with only occasional interaction with supervisors and co-workers and no interactions with the public. (Tr. at 19.) In analyzing the opinions, the ALJ clearly explained that he gave the opinions significant weight because they were consistent overall with Plaintiff's mental status examination findings of record and the conservative treatment measures, which the ALJ cited at length. (Tr. at 22 (citing Tr. at 729, 736, 743, 751-52, 758-59, 767, 774-75, 783, 789, 1475-76, 1481-82, 1488-89, 1500, 1741-42).) Notably, in the context of considering the State agency opinions, the ALJ also assigned significant weight to the prior administrative decision, which included restrictions relating to concentration, persistence, and pace which are nearly identical to those in the present RFC. (See Tr. at 62) (limiting Plaintiff to "the performance of work involving unskilled routine, simple, repetitive tasks," no "work at a production rate," and no work performing "tasks requiring complex decision making, constant change or dealing with crisis situations"). The ALJ further explained that he included "additional limitations regarding social interaction . . . based upon observations of distraction in examinations" and "reports of anxiety symptoms in counseling sessions." (Tr. at 22.) As such, the ALJ adequately described his bases for relying on the State agency opinions in formulating Plaintiff's mental RFC.

Plaintiff also complains that the ALJ should not have given the opinion of examining psychologist Dr. Rebecca Kuhns "significant weight," because her opinion was not consistent with the medical evidence. (Pl.'s Br. at 14.) However, despite Plaintiff's claims to the contrary, Dr. Kuhn's opinion was consistent with her own observations and Plaintiff's mental-status examinations. (See Tr. at 23 (citing Tr. at 449-50, 729, 735, 743, 751-52, 758-59, 767, 774-75,

15

783, 789, 1475-76, 1481-82, 1488-89, 1600, 1741-42).) In particular, Dr. Kuhns noted that Plaintiff was cooperative, with a well-organized and goal-oriented thought process. (Tr. at 449.) He was also noted to be alert and fully oriented, with intact memory and the ability "to sustain adequate attention/concentration during the interview." (Tr. at 450.) Although Dr. Kuhns recorded that Plaintiff was depressed with some other abnormal findings, sufficient evidence exists to concluded that her opinion was consistent with both her own examination and the exams the ALJ cited. (Tr. at 450.) The ALJ thus sufficiently explained his decision to give Dr. Kuhns's opinion "significant weight." To the extent Plaintiff raises objections to Dr. Kuhn's analysis or the weighing of the evidence by the ALJ, Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff) is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, explained the reasons for his determinations, and supported that explanation with substantial evidence.

Finally, Plaintiff challenges the ALJ's analysis of the May 30, 2007 opinion of Dr. Anthony Smith. Plaintiff argues that the ALJ's choice to give one portion of Dr. Smith's

opinion "significant weight," while giving the overall opinion "little weight," "cannot be substantial evidence in support of the RFC findings without further explanation." (Pl.'s Br. at 15.) However, that explanation exists in the ALJ's decision. The ALJ gave the overall opinion "little weight" because it was significantly remote in time from Plaintiff's alleged onset date of January 1, 2016. (Tr. at 23.) Further, Dr. Smith's opinion that Plaintiff would have no difficulty responding to supervision received "little weight" because it was inconsistent with the more current medical evidence reflecting distractibility, which the ALJ addressed by including social limitations in the RFC. The portion of the opinion to which the ALJ gave "significant weight" was Dr. Smith's opinion that Plaintiff's symptoms "would not inhibit performance of unskilled work or maintaining concentration, persistence, and pace" (Tr. at 23), and the ALJ included in the RFC the limitation to simple, routine, repetitive tasks. Thus, the explanation is sufficient and the Court finds no basis for remand.

IT IS THERFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc #16] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 21st day of March, 2022.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge

17

Case 1:20-cv-01008-NCT-JEP   Document 18   Filed 03/21/22   Page 17 of 17